## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **CHRISTMAS LUMBER COMPANY, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Docket No. _____** <br> **TWELVE MEMBER JURY DEMANDED** |
| **FEDERATED SERVICE INSURANCE COMPANY,** | ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT

Comes now Plaintiff Christmas Lumber Company, Inc. ("Christmas Lumber" or "Plaintiff"), by and through counsel, and files this Complaint for breach of contract, bad faith refusal to pay, and promissory estoppel against Defendant Federated Service Insurance Company ("Federated" or "Defendant"), and in support thereof states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a Tennessee corporation in the business of supplying lumber and manufacturing specialty wood products such as trusses, windows, and doors.

2.      Upon information and belief, Defendant is a Minnesota corporation with its principal place of business located at 121 E. Park Square, Owatonna, Minnesota.

3.      This Court has diversity jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and the suit is between citizens of different states.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the policy of insurance upon which this case is premised was issued to Plaintiff, a resident of this judicial

district, in this judicial district. Moreover, the loss that is the subject of this litigation occurred in Knoxville, Tennessee, which lies in this judicial district.

## BACKGROUND INFORMATION

5. At all times material hereto, Christmas Lumber was insured by Federated pursuant to Commercial Package Policy No. 6072424 ("the Policy").[1] **(Exhibit 1)**.

6. Christmas Lumber paid all premiums on the Policy, and the Policy was in full force and effect at all times material hereto.

7. The Policy afforded commercial property insurance to several properties and the improvements thereon owned by Christmas Lumber, including 10519 Kingston Pike, Knoxville, Tennessee 37922-3167 ("the Property").

8. At all times material hereto, a three-sided, covered, outdoor storage building with a metal roof ("the Building") existed on the Property.

9. At all times relevant hereto, a second three-sided, covered, outdoor storage building with a metal roof ("the Second Building") existed on the same Property adjacent to the Building.

10. The Building and Second Building had existed on the Property since at least the 1980s.

11. The front, open side of the Building and Second Building were partially supported by numerous vertical wooden posts, the top of which extended to trusses near the top of the building and the bottom of which were set within the concrete flooring of the building.

12. At some point in the 1990s, a limited number of vertical posts supporting the Building were damaged. At that time, the Building was repaired via installation of new posts,

[1] The Policy was issued for the period of April 30, 2021, through April 29, 2022, and renewed for the period of April 30, 2022, through April 29, 2023. The Policy was again renewed for the period of April 30, 2023, through April 29, 2024.

2

which were not set within the concrete but were instead attached to the ground using bolts and brackets.

13.     Following the installation of the new posts in the 1990s, the Building stood without issue until the April 1, 2023, loss described in this Complaint.

14.     The vertical support posts of the Second Building were not similarly damaged, and at all times relevant hereto the bottom of the posts were set in the concrete ground as originally constructed.

15.     The Second Building stood without issue from the time it was constructed in or around the 1980s until the April 2, 2024, loss described in this Complaint.

16.     In or around June of 2021, an agent of Federated visited the Property to evaluate the Property and assess potential risks (the "June 2021 Inspection"). Following the June 2021 Inspection, Federated issued a letter dated June 11, 2021 **(Exhibit 2)**, which stated:

300-215-1                          **Recommendation**

Thank you for the recent opportunity to visit your business and discuss with you any conditions that may increase the possibility of a loss occurring. We appreciate you taking the time and committing your resources to provide a safer working environment for you and your employees. Attached is a summary of the recommendations we discussed.

Recommendations are classified as either:

"A" - serious and urgent in nature
"B" - important to complete but of a less serious nature

"Location level" - pertains only to a specific location
"Account Level" - pertains to the company as a whole

When these items have been completed or scheduled for completion, please update the attached Recommendation Summary and return it to us by using one of the following methods:
- Use the enclosed, postage paid envelope
- Email To: **FieldServicesCoord@fedins.com**  or  Fax To (toll-free): **866-638-1216**

We have many resources and programs on our website to help you with a variety of risk management needs. Please visit www.federatedinsurance.com and click "Login." If you have not yet registered for our site, use this same link to complete our brief registration process.

If you have any questions or need additional information please call our toll-free number at **866-333-7755.**

Thank you,

Andrew Hill
Federated Mutual Insurance Company

CC: Cameron Bloebaum

3

17.     The second page of the letter read:

**Recommendation Summary**

**Location Level - pertains to only a specific location**

10519 KINGSTON PIKE     KNOXVILLE, TN 37922-3167

Please indicate completion or intent to complete by indicating a date in the appropriate box below.

| Class | Recommendation(s) | Have Completed | Will Complete By |
|-------|-------------------|----------------|------------------|
| | **Respond by: 08/10/2021** | | |
| B | The fire extinguisher on the Moffett truck had not been serviced since 2019. These should be serviced on an annual basis. The company on the tag should be contacted to come do this. | __/__/__ | __/__/__ |

Comments:

18.     The June 11, 2021, letter did not identify any condition of the Building or Second Building as a "condition[] that may increase the possibility of a loss occurring."

19.     In or around November of 2021, an agent of Federated visited the Property again to evaluate the premises and assess potential risks (the "November 2021 Inspection"). Following the November 2021 Inspection, Federated issued a letter dated November 24, 2021 **(Exhibit 3)**, which stated:

300-215-1     **Recommendation**

Thank you for the recent opportunity to visit your business and discuss with you any conditions that may increase the possibility of a loss occurring. We appreciate you taking the time and committing your resources to provide a safer working environment for you and your employees. Attached is a summary of the recommendations we discussed.

Recommendations are classified as either:

"A" - serious and urgent in nature
"B" - important to complete but of a less serious nature

"Location level" - pertains only to a specific location
"Account Level" - pertains to the company as a whole

When these items have been completed or scheduled for completion, please update the attached Recommendation Summary and return it to us by using one of the following methods:
- Use the enclosed, postage paid envelope
- Email To: **FieldServicesCoord@fedins.com**  or  Fax To (toll-free): **866-638-1216**

We have many resources and programs on our website to help you with a variety of risk management needs. Please visit www.federatedinsurance.com and click "Login." If you have not yet registered for our site, use this same link to complete our brief registration process.

If you have any questions or need additional information please call our toll-free number at **866-333-7755.**

Thank you,

Timothy Thomas
Federated Mutual Insurance Company

CC: Theron Cleveland, Danny Downs

4

20.     The second page of the November 24, 2021, letter read:

**Recommendation Summary**

Location Level - pertains to only a specific location

10519 KINGSTON PIKE     KNOXVILLE, TN 37922-3167

Please indicate completion or intent to complete by indicating a date in the appropriate box below.

| Class | Recommendation(s) | Have Completed | Will Complete By |
|---|---|---|---|
| | **Respond by: 01/23/2022** | | |
| B | A filler plate should be installed in each unused breaker opening in the electrical panel in the lower storage building.  This could help control a fire and electric shock hazard. | _/_/_ | _/_/_ |
| B | A qualified electrician should inspect the aged/weathered circuit breaker panel in the lower storage building and make any changes/updates required for fire safety purposes. | _/_/_ | _/_/_ |
| B | A qualified electrician should be engaged to replace the light fixture in the basement area of the main building with an approved fixture. | _/_/_ | _/_/_ |

Comments:

21.     The November 24, 2021, letter did not identify any condition of the Building or Second Building as a "condition[] that may increase the possibility of a loss occurring."

## POLICY LANGAUGE

22.     **Section A** of the **Building and Personal Property Coverage Form** of the Policy (**Exhibit 1, page 1-6**[2]) provides that Federated "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Causes of Loss."  The Policy defines "Covered Causes of Loss" as "direct physical loss unless the loss is excluded or limited in this policy."

23.     The Policy contains a number of standard exclusions. For example, **Section B.1.h.** of the **Causes of Loss – Special Form** of the Policy (**Exhibit 1, page 1-39**) provides that Defendant will not pay for loss or damage caused by:

> **h. "Fungus", Wet Rot, Dry Rot And Bacteria**
> Presence, growth, proliferation, spread or any activity of "fungus",
> wet or dry rot or bacteria.

---

[2] Because Exhibit 1 does not have continuous page numbers, for purposes of this Complaint, Plaintiff has labeled the pages of Exhibit 1 as 1-1 through 1-59 so as to enable the Court to easily identify the referenced provisions of Exhibit 1. Plaintiff will comply with all local rules and judicial preferences regarding citations to the record in subsequent pleadings and filings.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungus", wet or dry rot or bacteria result from fire or lighting; or

(2) To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions . . . **B.1.h** apply[s] whether or not the loss event results in widespread damage or affects a substantial area.

24.    Additionally, the exclusion in **Section B.2.d** (**Exhibit 1, page 1-39**) states:

We will not pay for loss or damage caused by or resulting from any of the following:

. . .

(d) (1) Wear and tear; (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself; (3) Smog; (4) Settling, cracking, shrinking or expansion; (5) Nesting or infestation, or discharge or release of wasted products or secretions, by insects, birds, rodents or other animals[;] (6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision[;] (7) The following causes of loss to personal property: (a) Dampness or dryness of atmosphere; (b) Changes in or extremes of temperature; or (c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

25.    Further, **Section B.3.** (**Exhibit 1, page 1-40**) provides:

We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage cause by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** Above to produce the loss or damage.

. . .

6

c. Faulty, inadequate or defective:

. . .

(3) Design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;

26.     However, **Section D** of the **Causes of Loss – Special Form (Exhibit 1, page 1-43)**

provides as follows under the heading, **"Additional Coverage – Collapse"**:

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1** through **D.7**.

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

. . .

d. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

(1) A cause of loss listed in **2.a.** . . . ;

(2) One or more of the "specified causes of loss"

## APRIL 1, 2023 WINDSTORM AND LOSS

27.     On April 1, 2023, severe storms passed through the Knoxville area.[3]  Wind gusts

near the Property exceeded 60 mph[4] and resulted in damage to properties and foliage across the

region.

---

[3] *See* https://www.wbir.com/article/news/local/high-winds-storm-damage-east-tennessee/51-aaceb0e7-b60a-4c18-88c5-8bb9d608c8e9

[4] https://www.wunderground.com/history/daily/us/tn/louisville/KTYS/date/2023-4-1

7

28.     As a result of the April 1, 2023, storm, some of the posts serving as vertical supports for the Building snapped.

29.     As a result of the April 1, 2023, storm, a significant portion of the Building collapsed back onto a row of trees behind the Property.  The following photographs show the collapsed portion of the Building following the storm:







9

## POST-LOSS

30.    Christmas Lumber reported the April 1, 2023, loss to Federated on April 3, 2023.

31.    Federated acknowledged the reported loss via email on April 5, 2023. In the email, Federated representative Brian Hughes ("Mr. Hughes") acknowledged that Federated was "receiving an influx of claims all across the country." **(Exhibit 4)**.

32.    On May 18, 2023, Mr. Hughes sent an email to Halliwell Engineer Associates ("Halliwell"), copying representatives of Christmas Lumber. In that email, Mr. Hughes stated that he needed the engineering company "to evaluate potential to repair and procedure in order to assist the adjuster in preparing a repair estimate." **(Exhibit 5)**.

33.    Federated took no substantive action on the claim for approximately three (3) months following the April 1, 2023, loss and the April 3, 2023, report of the loss, despite Christmas Lumber representatives routinely reaching out as to the status of the claim.

34.    On June 26, 2023, nearly three (3) months after the loss, Halliwell conducted an inspection of the Property.

35.    Following the June 26 inspection, on that same day, Christmas Lumber representatives sent the following internal email:

> Halliwell Engineering Associates sent a project engineer out of Cincinnati this morning to perform a site visit after David Morse and Associates (an independent claims adjuster) was unable to complete the task of accessing the claim damage.
>
> Halliwell project engineer recapped his site visit with me and got his immediate engineer supervisor on the phone with me. They both told me for the safety of the public and our employees we need to immediately tape off the damaged sections of the building, both inside the yard and behind the shed. They expressed concerns of personal harm for our staff, customers and the people who live in the apartments behind us.

10

> My recommendations are to go ahead and start moving inventory out, tape off the area and shore up the structure until we can get Total Demolition Services here to do the demolition. (I sent the costs out on 4/24/23 to you $24,650.00). I called them to see when they could get started and they told me I would have an answer in the morning.
>
> A temporary fence and yard area could be installed in front of the store until demolition and the rebuild is completed.

**(Exhibit 6)**.

36.     Indeed, following the June 26 inspection, on or about that same day, an engineer from Halliwell reported to the Building Official for Knox County, Tennessee, that the condition of the Building was too dangerous to use and that access to the same should be prohibited.

37.     On June 27, 2023, Mr. Hughes sent an email to Christmas Lumber representatives, which stated in pertinent part:

> Hopefully you already know about the hazardous condition notice brough up by the Halliwell engineer at yesterday's inspection.
>
> I am wanting to emphasize the importance of closing off this area of the structure so that any future movement or potential collapse does not create a hazard to people or other property. Attached is the note from the engineer.
>
> Do you have adequate space to relocate supplies? We need to consider what would be needed to help you completely close off this area and relocate the materials in another area. Federated desires the safety of all persons over the interests of any costs savings here and need your help to determine what we can do to make this situation safe while you determine how to repair or rebuild what is needed.

**(Exhibit 7)**.

38.     Indeed, upon information and belief, on or about July 11, 2023, a representative from Federated told Christmas Lumber employee Greg Bangert that the Building was too dangerous for customers and employees to be around, and that the entire area around the Building should be taped off until such time as Christmas Lumber had the structure demolished.

11

39.     On July 20, 2023, Mr. Hughes sent the following email, which provides in pertinent part:

> Finally got engineers report here.  I will follow soon with approved adjusters estimate.
>
> Thanks again for your patience.

**(Exhibit 8)**.

40.     Based upon the aforementioned directives from Federated, on or about July 20, 2023, the Building was demolished.

41.     At no time during the three-and-a-half month period between April 1, 2023, the date of the loss, and July 20, 2023, the date the Building was demolished, did Federated indicate that there was a possibility that there would not be coverage for the loss under the Policy.

42.     To the contrary, Mr. Hughes, in his capacity as agent of Federated, had represented to Christmas Lumber employees on multiple occasions that he was in the process of obtaining an estimate for the repair or demolition and rebuild of the structure

43.     Then, another month later, on August 21, 2023, Mr. Hughes sent the following email:

> I think our communications have crossed in the delivery, but I received another inquiry through your MyShield account about this loss in Knoxville TN on the lumber shed.
>
> As we discussed, we have had an adjuster and an engineer reviewing the damages and causation.  Currently causation is being reviewed and a determination of coverage is in process.

**(Exhibit 9).**

44.     The August 21, 2023, email from Mr. Hughes, sent more than five (5) months after the loss, and after multiple indications that the loss would be covered, and after the Building was

12

demolished, was the first indication Christmas Lumber was given that the loss may potentially not be covered under the Policy.

45.     On September 20, 2023, Mr. Hughes sent the following email to Christmas Lumber representatives:

> Just wanted to keep you up to date on the coverage question here for the lumber shed.
>
> We had a meeting today to discuss this loss and the attorney's coverage opinion. We came up with some additional coverage questions that need to go back to the attorney for some answers about the interpretation of the policy language. I will be sending those questions out to the attorney today.
>
> Just letting you know it will be a few more days before we have a coverage decision here on this building loss. As before, I want you to know we are continuing to press forward towards a coverage decision here and I will promptly let you know of the outcome as soon as I have a final decision. Thank you for your continued patience during this coverage review time.

**(Exhibit 10)**.

46.     On October 4, 2023, Mr. Hughes sent the following email:

> Thanks for your follow up.  Just today I received an opinion back from the coverage attorney which Federated has asked for interpretation of policy language as it would apply to the findings of the engineer in his report.  The problem centers around the primary reason for the loss to the building as it was rotted posts that destabilized the structure and the repairs were insufficient to provide the stability the building needed.
>
> I am requesting federated take a higher level review of the attorney's opinion and to advise of their decision.  As soon as I have a response back, I will promptly get with you on the coverage decision.

**(Exhibit 11)**

47.     On October 16, 2023, six and one-half months after the loss was reported, Federated issued its denial letter **(Exhibit 12)**.  In the denial letter, Mr. Hughes stated that "the causation of

the loss was that the lateral supports on the open side of the building had rotted below the concrete and failed. Attempts had been made over the years to replace the rotted supports however, the replaced supports were not sufficiently anchored to the ground and did not return the lateral support this building had previously." The adjuster went on to state that the loss was excluded under the "'Fungus', Wet Rot, Dry Rot And Bacteria" exclusion because "the decayed condition of the support posts was the significant factor in allowing the building failure."

48.     While the October 16, 2023, letter attributed the fall to insufficient supports, the posts identified in the communication had stood in the same fashion for several decades without any issue until the April 1, 2023, windstorm.

49.     On January 23, 2024, Christmas Lumber, through the undersigned counsel, sent a demand letter **(Exhibit 13)** for payment under the Policy. The demand pointed out that the October 16, 2023, denial letter attributed the falling of the Building to hidden decay and poor workmanship, thus establishing that coverage would be provided under the **"Additional Coverage – Collapse"** provision of the Policy. (See Paragraph No. 26 of this Complaint.)

50.     Federated responded by letter from counsel dated February 21, 2024, reaffirming its denial of the loss **(Exhibit 14).** The February 21, 2024, letter, bizarrely, asserted that the **"Additional Coverage – Collapse"** provision of the Policy was inapplicable because the Building was purported "merely leaning, and there has not been an abrupt falling down of the building." However, as clearly demonstrated by the photographs in Paragraph 29 of this Complaint, the Building had fallen down upon the tree line behind in the Property. According to Federated, the existence of the tree line, which prohibited the Building from falling all the way to the ground, resulted in the **"Additional Coverage – Collapse"** provision being inapplicable.

14

51.     Significantly, Federated did not identify the bracketed posts, which were in plain view in 2021 and the decades before that, as a "condition [ ] that may increase the possibility of a loss occurring" after either of its 2021 inspections of the Property.

## April 2, 2024 Loss

52.     In the late evening of April 2 and early morning of April 3, 2024, severe storms passed through the Knoxville area.  Indeed, wind gusts near the Property reached approximately 47 mph.[5]

53.     As a result of the April 2 and 3, 2024, storm, the Second Building was blown down.

54.     As a result of the April 2 and 3, 2024, storm, several of the posts supporting the open end of the Second Building snapped in multiple places. None of the posts had previously been repaired and all were in their original condition.

55.     As a result of the April 2 and 3, 2024, storm, a significant portion of the Second Building collapsed and fell back onto the property adjacent to Property. The following photographs show the collapsed portion of the Second Building following the storm:

---

[5] https://www.wunderground.com/history/daily/us/tn/louisville/KTYS/date/2024-4-3





16





56.     Christmas Lumber reported the loss of the Second Building to Federated on April 3, 2024.

57.     On April 10, 2024, an engineer hired on behalf of Federated inspected the Second Building. Later in the day on April 11, 2024, Christmas Lumber had the Second Building demolished due to its dangerous condition.

58.     By letter dated May 20, 2024, Federated denied coverage for the loss to the Second Building. **(Exhibit 15)**.

59.     Federated's May 20, 2024, denial attributed the collapse of the Second Building to rot of the posts supporting the open end of the structure.  Specifically, Federated asserted that "the embedded posts were surrounded by concrete, which was conducive to stormwater runoff around the posts.  This provided the repeated moisture needed for the growth and development of the fungal hyphae within the posts, which was consistent with the observed dark discolorations."

60.     In short, Federated denied Christmas Lumber's claim arising from the April 1, 2023, loss because the posts supporting the Building were repaired as to not extend below ground level.  Then, Federated denied Christmas Lumber's claim arising from the April 2 and 3, 2024, loss of the Second Building because the posts embedded in concrete purportedly led to deterioration of the lateral support.

61.     Significantly, Federated did not identify any condition of the posts supporting the Second Building, as a "condition [  ] that may increase the possibility of a loss occurring" after either of its 2021 inspections of the Property.

## DAMAGES

62.     As a result of the April 1, 2023, loss of the Building, Christmas Lumber incurred demolition expenses in the amount of $34,100.00.

63.     It is estimated that, as a result of the April 1, 2023, loss of the Building, the reconstruction cost of the Building is $342,865.00.

64.     As a result of the April 2 and 3, 2024, loss of the Second Building, Christmas Lumber incurred demolition expenses in the amount of $14,950.00.

18

65.    As a result of the April 2 and 3, 2024, loss of the Second Building, Christmas Lumber will incur reconstruction costs in an amount to be determined at trial.

66.    As a consequence of the denial of coverage, Christmas Lumber has incurred significant storage costs to store its products and materials that were previously stored and protected from the elements by the Building and the Second Building.

67.    Christmas Lumber has also suffered losses to its products and materials as a consequence of Federated's refusal to provide coverage under the Policy.

## CAUSES OF ACTION

### Count I – Breach of Contract

68.    Christmas Lumber incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

69.    The Policy is a valid contract between Christmas Lumber and Federated which is supported by valid consideration. The Policy provided insurance coverage for loss or damage to the Property and the improvements thereon, including, but not limited to, the Building and the Second Building.

70.    The Policy is an "all risk" policy, which means that it provides insurance coverage for all direct physical loss or damage unless the loss is specifically excluded in the Policy. There are no applicable exclusions in the Policy that preclude coverage of the Building under the Policy.

71.    Windstorms were the causes of the collapse of the Building and Second Building in 2023 and 2024, respectively.

72.    Even if rot or deterioration contributed to the collapse of the Building, such decay was hidden from view until after the losses.  That such decay was hidden from view is evidenced by Federated's failure to notice the rot during either of its 2021 inspections.

19

73.     Even if the reasoning set forth in Federated's denial letters of October 6, 2023, and May 20, 2024, is accepted as true, coverage is invoked under the "Additional Coverage – Collapse" provision of the Policy.

74.     Federated is in total, material breach of the Policy for failing to provide coverage under the Policy for the demolition and replacement cost of the Building following the April 1, 2023, loss and April 2-3, 2024, loss, and Federated is liable to Christmas Lumber under the Policy as a result of the losses.

75.     Federated is estopped from denying coverage under the Policy as to the April 1, 2023, loss due to the actions, negligence, and representations of its agents, including but not limited to, Mr. Hughes. Federated represented, in writing and verbally, that it was taking steps to provide coverage for the loss pursuant to the Policy.

76.     Despite Federated's representations that the April 1, 2023, loss is compensable under the Policy, as evidenced by the written correspondence between Mr. Hughes and Christmas Lumber representatives, Federated has breached the Policy by its refusal to timely and fully pay Christmas Lumber's claim for insurance proceeds.

77.     As a result of Federated's breach of contract, Christmas Lumber has sustained substantial compensable losses for the amounts claimed under the Policy, as well as money damages for economic losses and other numerous and assorted incidental and consequential damages. Federated is liable to Christmas Lumber for its damages.

78.     As a result of Federated's breach, Christmas Lumber has sustained substantial compensable losses, namely, the cost of demolition and reconstruction of the Building and Second Building, plus other numerous and assorted incidental and consequential damages which will be shown at trial.

20

79.     Federated is liable to Christmas Lumber for punitive damages because its conduct in breaching the contract was, and continues to be, intentional, fraudulent, malicious, and/or reckless. Namely, *inter alia*, Federated's conduct in failing to conduct a timely investigation of the April 1, 2023, loss, then representing that the loss would be covered only to deny coverage after the Building was demolished as to deprive Christmas Lumber of the opportunity to have its own expert inspect the premises for purposes of determining caution, establishes a level of culpability beyond that of a mere failure to perform contractual obligations.

## Count II – Statutory Bad Faith

80.     Christmas Lumber incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

81.     Federated's refusal and failure to pay the amounts contractually owed to Christmas Lumber is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Federated by correspondence of January 23, 2024, and April 3, 2024, and full payment has not been made for the losses as required pursuant to the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

82.     Federated's bad faith is established by, *inter alia*, its conduct in failing to conduct a timely investigation of the April 1, 2023, loss, then representing that the loss would be covered only to deny coverage after the Building was demolished as to deprive Christmas Lumber of the opportunity to have its own expert inspect the premises for purposes of determining caution. Federated's conduct in conducting a pre-loss inspection of the Building in which it identified no problems with the structure, followed by its denial of coverage due to purported open and obvious defects in the construction of the structure, further evidence bad faith.

21

83.    In so acting, Federated intended to and did injure Christmas Lumber in order to protect its own financial interests and Federated should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

### Count III – Promissory Estoppel/Detrimental Reliance

84.    Christmas Lumber incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

85.    The remedy of promissory estoppel is appropriate in the event of promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

86.    As stated above, Federated unambiguously promised and represented to Christmas Lumber that the Building would be insured under the Policy. At no time, prior to the demolition of the Building, did Federated make any representations that the April 1, 2023, loss would not be covered.

87.    In reasonable reliance on the promises and representations made by Federated that the Building would be insured and covered under the Policy, Christmas Lumber paid the premium required by Federated, and, when prompted by Federated and its agents, demolished the Building, only to be told that the Building would not be covered under the Policy.

88.    Christmas Lumber was prejudiced by the representations of Federated that the loss would be covered because it demolished the Building in reliance upon those representations and, thus, was not afforded the opportunity to have an expert inspect the damage for purposes of determining causation of the collapse.

22

89.     In light of Christmas Lumber's reasonable and detrimental reliance on the promises made by Federated, Christmas Lumber respectfully asks this Court to enforce the promise made and thereby require Federated to pay the full demolition and replacement costs of the Building.

## **DEMAND FOR JURY TRIAL**

90.     Christmas Lumber demands a jury of twelve (12) to try its Complaint against Federated.

WHEREFORE, as a result of the foregoing, Christmas Lumber would respectfully request that proper process be issued and served on Federated requiring them to answer or otherwise respond in the time period allotted by law, and that this Honorable Court award a judgment against Federated as follows:

a.      Requiring Federated to pay Christmas Lumber the full actual demolition and replacement cost of the Building pursuant to the Policy, in an amount not to exceed $1,000,000.00;

b.      Requiring Federated to pay Christmas Lumber the full actual demolition and replacement cost of the Second Building pursuant to the Policy, in an amount not to exceed $1,000,000.00;

c.      Granting Christmas Lumber punitive damages against Federated to the fullest extent as authorized by law;

d.      Granting Christmas Lumber all costs incurred by it as a result of this action;

e.      Granting Christmas Lumber pre- and post-judgment interest; and

f.      Granting Christmas Lumber such other further and general relief as this Court deems just and equitable.

Respectfully submitted this the __26th__ day of July, 2024.

    S/Nathaniel D. Moore
Nathaniel D. Moore (BPR# 031520)
Andrew M. Hale (BPR# 036815)
KRAMER RAYSON LLP
P.O. Box 629
Knoxville, Tennessee 37901
(865) 525-5134
*Attorneys for Plaintiff Christmas Lumber Company, Inc.*